UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-20581-CR-GAYLES/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HECTOR JULIO JIMENEZ CARABALLO,
ALBERTO PEGUERO,
ROBERTO PERALTA IBARRA, and
VICTOR VAZQUE DIAZ,

    Defendants.
_____/

**REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO DISMISS INDICTMENT**

This matter is before the Court on Defendants' motion to dismiss indictment. [D.E. 29]. The government responded in opposition on April 14, 2022. [D.E. 32]. Defendants have not filed a reply and the time to do so has since passed. Accordingly, the motion is now ripe for disposition. After careful consideration of the motion, the record, the relevant authorities, and for the reasons discussed below, Defendants' motion should be **DENIED**.[1]

## I.    BACKGROUND

On November 1, 2021, Dutch naval officers flying in a Dutch helicopter observed a go-fast vessel ("GFV") traveling in international waters approximately 100

---

[1] On March 29, 2022, the Honorable Darrin P. Gayles referred the Motion to the Undersigned for a Report and Recommendations. [D.E. 30].

nautical miles north of Colombia. The GFV had four individuals on board and contained visible fuel barrels and packages on its deck. Upon counter-detection of the Dutch helicopter, the crew aboard the GFV began jettisoning some of those packages into the sea.

Suspicious that the GFV was engaged in drug smuggling, the Holland – a Dutch naval vessel in the vicinity – was diverted to investigate the GFV. The crew of the Holland was able to interdict the GFV without the use of force, and the GFV was then boarded by a team comprising Dutch naval officers and officers from the United States Coast Guard who had been assigned to the Holland as part of a collaborative law enforcement operation.

After restraining the GFV's crew, the master of the GFV identified his nationality – and the nationality of his vessel – as Dominican. Based on this claim, the government of the Dominican Republic was contacted and advised that it could "neither confirm nor deny" the Dominican nationality of the GFV. Accordingly, the GFV was treated as a vessel without nationality and thereby subjected to the jurisdiction of the United States.

A search of the GFV uncovered 237 kilograms of cocaine. The GFV was subsequently sunk by the interdicting law enforcement officers, and the GFV's crew (and contraband) were taken into custody on board the Holland. They were later transferred on to a United States Coast Guard ship and transported to the Southern District of Florida, where they have since been indicted for possessing and conspiring

to possess cocaine with intent to distribute while on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. § 70503(a)(1).

## II.     APPLICABLE PRINCIPLES AND LAW

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b), which allows a defendant to challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). Moreover, a motion that the court lacks jurisdiction may be made at any time while the case is pending. *See* Fed. R. Crim. P. 12(b)(2).

An indictment "may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. *See Torkington*, 812 F.2d at 1354.

## III.     ANALYSIS

Defendants' motion advances two arguments in support of dismissal. First, in what they frame as an issue of first impression in this Circuit, Defendants argue that 46 U.S.C. § 70502(d)(1)(C) is facially unconstitutional because it goes beyond the limits of customary international law embodied in the Felonies Clause of the Constitution. Second, Defendants argue that exercising jurisdiction under the

Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501, *et seq.* (the "MDLEA"), in this case would deprive Defendants of the due process rights guaranteed to them by the Fifth Amendment to the Constitution because of the United States Coast Guard's "limited" involvement in this interdiction operation. The Court finds Defendants' arguments unpersuasive.

### A.     *The MDLEA and its Definition of Stateless Vessel*

The Constitution grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. CONST. art. I, § 8, cl. 10. "As interpreted by the Supreme Court, this clause contains three distinct grants of power: (1) the power to define and punish piracies (the Piracies Clause); (2) the power to define and punish felonies committed on the high seas (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations, (the Offences Clause)." *See United States v. Macias*, 654 F. App'x 458, 460 (11th Cir. 2016) (quotation marks and citation omitted).[2]

Pursuant to this authority, and in recognition of the fact that "trafficking in controlled substances aboard vessels is a serious international problem, . . . [that] presents a specific threat to the security and societal well-being of the United States[,]" Congress enacted the MDLEA in 1986. *See* 46 U.S.C. § 70501. The MDLEA makes it a federal crime for a person "on board a covered vessel . . . [to] knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance." *See* 46 U.S.C. § 70503(a); *see also United States*

---

[2]     This case involves Congress' power under the Felonies Clause.

*v. Estupinan*, 453 F.3d 1336, 1338 (11th Cir. 2006). A "covered vessel" is one that, among other things, is "subject to the jurisdiction of the United States." *See* 46 U.S.C. § 70503(e)(1). In turn, the MDLEA deems a vessel subject to the jurisdiction of the United States if the master of the vessel makes a claim of nationality but the claimed nation of registry "does not affirmatively and unequivocally assert that the vessel is of its nationality." *See* 46 U.S.C. § 70502(c)(1)(A), (d)(1)(C). Accordingly, if the authorities of a claimed nation of registry are unable to corroborate a master's claim of nationality, the MDLEA deems that vessel stateless, allowing for the prosecution under United States law of any person aboard the vessel.

### B. *The MDLEA Was a Constitutional Exercise of Congressional Authority Under the Felonies Clause*

Defendants argue that § 70502(d)(1)(C) is unconstitutional because its definition of stateless vessel clashes with customary international law ("CIL"). According to Defendants, the scope of the power granted by the Felonies Clause to Congress is confined to the limits proscribed by CIL and under CIL, a verbal claim of nationality by the master of the vessel constitutes a prima facie showing of nationality. However, because § 70502(d)(1)(C) allows U.S. officers to treat as stateless vessels that, under international law, would be considered vessels with nationality, this jurisdictional provision of the MDLEA transcends CIL and the scope of power granted by the Felonies Clause.

As a threshold matter, the Court disagrees with Defendants' categorization of the question at hand as an issue of absolute first impression in this Circuit. Defendants' claim of novelty is belied by a review of *United States v. Macias*, where

5

the Eleventh Circuit, in a per curiam unpublished opinion, addressed this exact question and rejected a near-identical claim of unconstitutionality against § 70502(d)(1)(C). *See Macias*, 654 F. App'x 458.

Much as Defendants do here, Macias argued that by enacting § 70502(d)(1)(C), Congress exceeded its authority under the Felonies Clause because his prosecution under MDLEA did not comport with CIL. Indeed, a review of that case and its record reveals that Macias made the same substantive argument that Defendants put forth here; namely, that the Felonies Clause is subject to the limits of CIL. *Compare* Reply Brief of Appellant at 4-7, *United States v. Macias*, 2016 WL 1375933 (arguing that "Congress's Power to Define and Punish Felonies on the High Seas is Limited by International Law") *with* [D.E. 29 at 3-8] (arguing that the Felonies Clause is constrained by customary international law). Yet, citing to several binding Eleventh Circuit holdings that have upheld the MDLEA, the *Macias* panel squarely rejected appellant's claim in that case:

> Macias contends that under *Bellaizac-Hurtado*'s reasoning, the term "define" in the Piracies and Felonies Clause limits Congress's authority under all three clauses to violations of customary international law. . . .
>
> Macias misreads *Bellaizac–Hurtado*. The Court in *Bellaizac–Hurtado* reasoned that it was the terms that follow "define" (i.e., "Piracies," "Felonies committed on the high Seas," and "against the Laws of Nations") that narrow Congress's authority. See id. at 1249. **And, unlike the Offences Clause, the Felonies Clause is not narrowed by the language "against the Laws of Nations."** *See* U.S. CONST., art. I, § 8, cl. 10. *Bellaizac–Hurtado*'s discussion of the meaning of the word "define" as it pertains to the Offences Clause does not support Macias's argument as to the Felonies Clause. Furthermore, the interpretation of the Felonies Clause Macias urges upon us conflicts with this Court's long-standing precedent that "the assertion of jurisdiction over stateless vessels on the high seas in no way

6

> transgresses recognized principles of international law." *See Marino–Garcia*, 679 F.2d at 1382.

*Macias*, 654 F. App'x at 461 (emphasis added).

While admittedly the Eleventh Circuit in *Macias* did not explicitly address whether MDLEA's definition of stateless vessel in § 70502(d)(1)(C) comports with CIL, that opinion nevertheless squarely refused to conflate the international law limitations found in the Offences Clause with the relatively broader scope of power embodied in the Felonies Clause,[3] which is in essence the same action that Defendants urge this Court to take here. We find that the reasoning in *Macias* at least provides a persuasive and analogous basis to deny Defendants' motion.

Putting *Macias* aside, Defendants' motion should also be denied because their theory for dismissal relies on First Circuit authority that departs from binding precedent in this Circuit holding that the MDLEA is a valid exercise of Congress' power under the Felonies Clause.

In support of their argument, Defendants rely primarily on a recent case from the First Circuit holding that § 70502(d)(1)(C) exceeded the bounds of the Felonies Clause. *See United States v. Davila-Reyes*, 23 F.4th 153 (1st Cir. 2022). After a

---

[3] *See United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1257 (11th Cir. 2012) (expressly differentiating the Offences Clause from the Felonies Clause by noting that "Congress possesses additional constitutional authority to restrict conduct on the high seas, including the Piracies Clause, U.S. Const., Art. I, § 8, cl. 10; the Felonies Clause, *id.*; and the admiralty power, *United States v. Flores*, 289 U.S. 137, 148–49, 53 S.Ct. 580, 582, 77 L.Ed. 1086 (1933). And we have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause."

review of various historical sources, *Davila-Reyes* concluded that the Felonies Clause only allows for the prosecution of crimes "committed by U.S. nationals or on vessels subject to U.S. jurisdiction under international law." *Id.* at 180. And, according to the First Circuit, under international law, a vessel may be deemed stateless only under three scenarios: (1) when the vessel refuses to claim a nationality; (2) when the vessel claims more than one nationality; and (3) when the claimed nation of registry affirmatively disavows a claim of nationality. *Id.* at 187. On the other hand, § 70502(d)(1)(C) "displaces the prima facie showing of nationality that arises from an oral assertion of nationality or registry—made in accordance with international law[,]" despite the fact that no source of international law recognizes a "country's failure to confirm nationality (instead of an outright denial), as a basis for overcoming [that] prima facie showing[.]" *Id.* at 184, 189. As such, the First Circuit held that § 70502(d)(1)(C) conflicts with international law and exceeds the authority granted in the Felonies Clause. *See id.* at 193.

But Defendants' reliance on *Davila-Reyes* is misplaced, for this Court is bound by the Eleventh Circuit, not the First Circuit; and the Eleventh Circuit has repeatedly held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause.[4] *See United States v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014) ("[W]e

---

[4] Defendants' argument likely would not fare any better if we were to apply the *Davila-Reyes* holding to this case. As noted in *Davila-Reyes*, a prima facie showing of nationality arising from a master's oral claim can be undermined, including, "[f]or example, [when] the vessel's claimed nationality differs from the nationality of most crew members, or if a small vessel is interdicted far from the claimed country[.]" *Davila-Reyes*, 23 F.4th at 192. Accordingly, Defendants' claim of Dominican

have repeatedly held that Congress has the power, under the Felonies Clause, to proscribe drug trafficking on the high seas."); *Bellaizac-Hurtado*, 700 F.3d at 1257 (11th Cir. 2012) ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause."); *Estupinan*, 453 F.3d at 1339 ("[W]e readily hold that the district court committed no error in failing to *sua sponte* rule that Congress exceeded its authority under the Piracies and Felonies Clause in enacting the MDLEA."); *Macias*, 654 F. App'x at 460 (11th Cir. 2016) ("This Court has already twice rejected the argument that Congress exceeded its authority under the Felonies Clause in enacting the MDLEA.").

As the Government rightly points out, Defendants' theory of unconstitutionality conflicts with Eleventh Circuit precedent in both *Campbell* and *Hernandez*. In *Campbell*, United States officers interdicted a vessel transporting marijuana in international waters. Although the vessel lacked all indicia of nationality, the master made a claim of Haitian nationality, which the Haitian government could neither confirm nor deny. As such, the vessel was treated as being subject to United States jurisdiction and the crew was arrested and charged under the MDLEA. *See Campbell*, 743 F.3d at 804. The Eleventh Circuit squarely rejected Campbell's claim that Congress exceeded its authority under the Felonies Clause to prosecute his crime under the MDLEA, holding that § 70502(d)(1)(C) represents a valid exercise of extraterritorial jurisdiction and allows for the prosecution of drug

---

nationality may be undermined because the GFV appears to have been a small vessel that was interdicted far from the shores of the Dominican Republic.

9

trafficking on the high seas. *Id.* at 810 ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause.") (quotation marks and citation omitted).

In *Hernandez,* the Court addressed a statutory challenge to whether the subject vessel was "without nationality" for purposes of United States jurisdiction. There, the vessel was subjected to U.S. jurisdiction after the Guatemalan authorities failed to either confirm or deny the claimed nationality. However, the defendants argued that because the vessel was indeed registered in Guatemala—as registry documents later found revealed—the United States did not have jurisdiction under the MDLEA to prosecute them. *See United States v. Hernandez*, 864 F.3d 1292, 1298 (11th Cir. 2017). The Eleventh Circuit rejected this claim, noting that certification of the Guatemalan response was all that was required to establish the vessel as stateless under the MDLEA's conclusive-proof provision. *Id.* at 1299. As the Court put it, "MDLEA statelessness does not turn on actual statelessness, but rather on the response of the foreign government." *Id.*

Equally fatal for Defendants' case here was the Court's holding as to international law challenges to the MDLEA. After concluding that the *Hernandez* defendants were in effect asserting violations of international law, the Court noted that "[a] person charged with violating [the MDLEA] . . . does not have standing to raise a claim of failure to comply with international law as a basis for a defense," because a "claim of failure to comply with international law in the enforcement of [the MDLEA] may be made only by a foreign nation." *Id.* (citing 46 U.S.C. § 70505).

10

Accordingly, the Court held that the courts were not the proper forum to seek challenges to the MDLEA on the basis of international law because "[w]ith that text, Congress has instructed: any battle over the United States' compliance with international law in obtaining MDLEA jurisdiction ***should be resolved nation-to-nation in the international arena, not between criminal defendants and the United States in the U.S. criminal justice system***." *Id.* at 1302 (emphasis added); *see also United States v. Anchundia*, No. 1:21-00223-KD-B, 2022 WL 855561, at *2–3 (S.D. Ala. Mar. 22, 2022) (holding that "the Eleventh Circuit has determined that whether a vessel is stateless under international law is not an issue to be determined by the courts" and declining to follow *Davila-Reyes*); *cf. Jones v. United States*, 137 U.S. 202, 224 (1890) (holding that certain factual jurisdictional determinations may be made by the Executive branch).

In light of this binding precedent establishing the constitutionality of the MDLEA, we cannot find that Congress exceeded its grant of authority under the Felonies Clause by enacting § 70502(d)(1)(C). This is a conclusion that has been unanimously adopted by all cases in our circuit analyzing this constitutional question post-*Davila-Reyes*. *See United States v. Mendez*, No. 21-CR-20579, 2022 WL 1202889, at *4 (S.D. Fla. Apr. 21, 2022) (holding that "the Eleventh Circuit [has] effectively foreclosed Defendants' argument that Congress did not have the power under the Felonies Clause to enact the MDLEA's jurisdictional provisions."); *United States v. Urbina*, No. 8:21-CR-108-TPB-AAS, 2022 WL 1171366, at *1 (M.D. Fla. Apr. 20, 2022) (refusing to apply *Davila-Reyes* because "[t]he Eleventh Circuit has consistently

11

rejected constitutional challenges to the MDLEA. . . . [and] has held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause[.]"); *United States v. Barros*, No. 21-CR-20438, 2022 WL 1135707, at *5 (S.D. Fla. Apr. 18, 2022) (upholding § 70502(d)(1)(C) and rejecting "Defendants' invitation to overlook binding precedent establishing the constitutionality of the MDLEA[.]"); *United States v. Berroa*, No. 21-20359-CR, 2022 WL 1166535, at *3 (S.D. Fla. Apr. 20, 2022) ("The Eleventh Circuit has repeatedly held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause."); *United States v. Waters*, No. 21-20582-CR, 2022 WL 1224728, at *2 (S.D. Fla. Apr. 26, 2022) (same); *Anchundia*, 2022 WL 855561 at *2 (same).

Further, even assuming that the Felonies Clause is bound by CIL, the MDLEA's extraterritoriality is further supported by the "protective principle." The protective principle is "the right of a state to punish a limited class of offenses committed outside its territory by persons who are not its nationals – offenses directed against the security of the state or other offenses threatening the integrity of governmental functions that are generally recognized as crimes by developed legal systems." Restatement (Third) of Foreign Relations § 402, cmt. f (1987); *see also United States v. Gonzalez*, 776 F.2d 931, 938 (11th Cir. 1985) (the protective principle "permits a nation to assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security"). This provides an additional basis to hold that § 70502(d)(1)(C) complies with international law because "Congress, under the protective principle of international law, may assert extraterritorial

12

jurisdiction over vessels in the high seas that are engaged in conduct that has a potentially adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems." *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002) (quotation marks and citation omitted).

In sum, because this Court is "bound to follow prior binding precedent unless and until it is overruled" by the Eleventh Circuit or the Supreme Court, *United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016), we hold that § 70502(d)(1)(C) is a valid exercise of Congress' power under the Constitution and reject Defendants' challenges.

### C. *The MDLEA is not Unconstitutional as Applied to Defendants Apprehended Simultaneously by Dutch and American Officials*

Alternatively, Defendants argue that the exercise of MDLEA jurisdiction in this case violates their due process rights because of the United States Coast Guard's "limited" involvement in the interdiction operation that led to this prosecution. In their view, the role played by the United States was so minimal that it precludes Defendants from enjoying the protections guaranteed by the United States Constitution – specifically, the Fourth and Fifth Amendments. To be clear, Defendants have neither claimed nor suggested a Fourth Amendment violation relating to the search and seizure of the GFV; they merely submit that the protections of the Fourth Amendment may not necessarily be available to them under these circumstances and that this theoretical absence of constitutional protection somehow creates a due process violation.

13

But this position is simply not supported by the record in this case. Although it is undisputed that Dutch naval officers in a Dutch helicopter first laid eyes on the GFV, it is also evident from a review of the record that it was an American boarding team who, with the assistance of the crew of the Holland, effectuated the seizure of the GFV. Moreover, it was the Americans who conferred with the government of the Dominican Republic to ascertain the GFV's status as a stateless vessel. And it was the Americans who participated in the search of the GFV that ultimately discovery the 237 kilograms of cocaine hidden on board.

This is not a case of minimal American involvement; this is a case of active collaboration between two sovereigns, which is neither novel nor inappropriate. *See, e.g., United States v. Persaud*, 605 F. App'x 791, 794 (11th Cir. 2015) (discussing enforcement of the MDLEA through collaboration between the British navy and the United States Coast Guard); *see also UN Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances*, Art. 9, Section 1(c) (calling on nations to "establish joint teams"). As such, Defendants' reliance on *Behety* and similar cases is misplaced. *See United States v. Behety*, 32 F.3d 503, 510-11 (11th Cir. 1994) (holding that the Fourth Amendment should not operate to exclude evidence recovered pursuant to the search of a boat by Guatemalan authorities). By contrast, the participation of the United States Coast Guard in this interdiction was substantial enough to confer Fourth Amendment protections on Defendants. *See id*. at 510 ("The Fourth Amendment is generally inapplicable to actions carried out by foreign officials . . . even if American officials are present and cooperate to some degree . . . . [but] the

14

exclusionary rule may be invoked if American law enforcement substantially participated in the search or if the foreign officials conducting the search were actually acting as agents for their American counterparts.") (internal citations omitted). Accordingly, Defendants' argument has no merit.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' joint motion to dismiss the Government's indictment [D.E. 49] should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have until fourteen (14) days to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 12th day of May, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge